# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 3:16-00117 |
| ) | **Judge Sharp** |
| ROBERT F. ARNOLD, ) | |
| JOE E. RUSSELL, II and ) | |
| JOHN VANDERVEER ) | |

## MEMORANDUM

There are several pending motions in this criminal case, including the following: (1) Defendant Arnold's Motion for Bill of Particulars (Docket No. 69) and Motions to Join in the same by Defendants Russell and Vanderveer (Docket Nos. 71 & 72); (2) the Government's Amended Motion Regarding Eligibility for Appointed Counsel (Docket No. 61) and Defendant Russell's Motion to Strike the same (Docket No. 63); and (3) Defendant's Russell's Motion for Appointment of Co-Counsel (Docket No. 80). The Court discusses those motions in turn, together with other related motions.

## I. Motion for Bill of Particulars

Under Rule 7 of the Federal Rules of Criminal Procedure, "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The function of a bill of particulars is to 'to minimize surprise and assist [the] defendant in obtaining the information needed to prepare a defense and to preclude a second prosecution for the same crimes." United States v. Crayton, 357 F.3d 560, 568 (6th Cir. 2004) (quoting United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993)). "A bill of particulars 'is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial.'" Id.

1

Here, Defendant Arnold[1] requests an answer to the following questions by way of his Motion for Bill of Particulars:

> 1. In light of McDonnell v. United States, 136 S. Ct. 2355 (2016), what are the elemental "official acts" that the government contends Defendant committed (or agreed to commit) with respect to Count One (conspiracy), Counts Six-Ten (honest services fraud), and Count Thirteen (extortion under color of official right)?
>
> 2. Concerning the substantive wire fraud charges in Counts Two-Five, what is the "money and property" obtained from Rutherford County that paragraph 48 refers to?
>
> 3. Concerning the "honest services fraud" charges in Counts Six-Ten, what constituted the "bribery and kickbacks" referred to in paragraph 51?
>
> 4. Concerning the "federal-programs bribery" charges in Counts Eleven and Twelve, what constituted the "thing of value" to which paragraphs 57 and 61 refer?
>
> 5. Also concerning the "federal-programs bribery" charges in Counts Eleven and Twelve, what constituted the "transaction and series of transactions of Rutherford County involving $5,000 or more" to which paragraphs 57 and 61 refer?
>
> 6. Concerning the "extortion under color of official right" charge in Count Thirteen, what constituted the "property not due [Defendant] or his office" referred to in paragraph 64?

(Docket No. 69 at 1-2). The Government asserts that the answers to those questions can be found in the Indictment that runs almost 30 pages and contains 66 paragraphs along with the voluminous discovery that has been provided. For the most part, the Court agrees.

"[T]he decision whether to grant a motion for a bill of particulars lies within the district court's discretion[.]" United States v. Robinson, 390 F.3d 853, 867 (6th Cir. 2004). "[T]he test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." United States v. Musick, 291 F.

---

[1] Defendants Russell and Vanderveer have both filed motions to join in Defendant Arnold's Motion. Those Motions (Docket Nos. 71 and 72) will be granted.

App'x 706, 724 (6th Cir. 2008). In this case, the Court will exercise its discretion by granting two of the Requests, and denying the remaining four.

As to Request 1, Defendant is satisfied with the Government's response. This is because, according to Defendant, the response "actually confirms that the alleged 'official acts' at issue in this case are the four set forth in paragraph 11," which is "fair enough." (Docket No. 78 at 1). As for the remaining requests, he claims that the Government's argument that the Indictment is sufficient under Rule 7(c)(1) of the Federal Rules of Criminal Procedure is a "non-sequitur" because "[i]t is black letter law that if the indictment were legally insufficient a bill of particulars could not cure it," and thus, "[i]f the answers to Defendant's Request could be found in the four corners of the Indictment, he would obviously not be making them." (Id.). Next, he argues that the answer to his requests "cannot be found in the staggeringly voluminous discovery materials" of "over five terabytes" for "one simple reason: They depend upon the prosecutor's *characterization* of the evidence[.]" (Id. at 2) (emphasis in original).

Addressing the latter point first, "a bill of particulars is not intended as 'a means of learning the government's evidence and theories,'" Musick, at 724 (citation omitted), yet that is what a request for the Government's "characterization" of the allegations suggests. Moreover, while the Defendant has been provided with a large amount of discovery, the Government claims – and Defendant does not dispute – that, after eight, early separate document productions, it "conducted a 'discovery walk-through' with defense counsel and other members of their teams on August 23, 2016, outlining the materials provided, answering questions posed by counsel and their technical support teams, and providing follow-up materials to further clarify the structure of the electronic disclosures made by the Government." (Docket No. 74 at 6). The Government has also offered to

3

convene another meeting in the future should any additional questions arise. While providing a "'mountain of documents in discovery'" does not resolve a motion for bill of particulars, United States v. Page, 575 F. App'x 641, 643 (6th Cir. 2014), that does not appear to be the case here.

Turning to the substance of Defendant's Requests 2 through 6, and notwithstanding his protestation to the contrary, the Indictment, when fairly read, answers the bulk of his questions. He posits that his "Request Nos. 3, 4, and 6 all seek the same information," albeit using "different legal terminology in different counts," specifically, "the 'bribery and kickbacks alleged in Counts Six-Ten (Request No. 3); the 'thing of value' that Counts Eleven-Twelve refer to (No.4); and 'the property not due [Defendant] or his office' alleged in Count Thirteen (No. 6)." (Id. at 3). The Government does not appear to disagree with that understanding.

Over half of the Indictment "describes the conspiracy, its objectives, the manner and means, and the overt acts taken in furtherance of the conspiracy. Further, each of the counts incorporates the first 46 paragraphs of the Indictment, including charts listing the payments alleged to have been received by each Defendant from JailCigs. The answer to Request numbers 3, 4 and 6 can be discerned from the language of the Indictment.

In the Court's opinion, however, the same cannot be said with respect to the questions posed by Requests 2 and 5 that ask for more specificity regarding the money and property *obtained from Rutherford County*, and the transaction or series of transactions *of Rutherford County* involving $5,000 or more. With regard to those Requests, Defendant argues that,

> "read as a whole," the Indictment appears to describe a "transaction" or "series of transactions" between JailCigs and Defendants, and/or between JailCigs and the purchasers of e-cigarettes. While [Defendant] understand[s] the government to contend that the payments from JailCigs should have gone to Rutherford County, where or what is the "transaction" or "series of transactions" of Rutherford County? A natural reading of the Indictment as a whole tends to suggest that the problem is

4

> the absence of transactions or series of transactions between JailCigs and Rutherford County. . . .
>
> Is the government saying that a "lost opportunity" is a transaction or series of transactions of Rutherford County involving $5,000 or more within the meaning of the statute? The answer is hardly self-evident, but it goes directly to an element of the offense(s). If the answer is affirmative the government should say so[.]

(Docket No. 78 at 2-3). The Court reads the Indictment the same way and will require the Government to furnish answers to Requests 2 and 5.

## II. Request for Inquiry Regarding Appointment of Counsel and Motions to Strike

A number of Motions have been filed in relation to the Government's request that the Court conduct an inquiry regarding Defendant Russell's eligibility for appointed counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. The Government's initial Motion for Inquiry (Docket No. 56) and Defendant Russell's Motion to Strike (Docket No. 57) were rendered moot by the Government's Motion to Substitute Pleading (Docket No. 60) and subsequent filing of an Amended Motion Regarding Eligibility for Appointed Counsel, which prompted Defendant Russell to file a second Motion to Strike. Defendant Vanderveer also entered the fray by filing a Motion to Strike Discovery Protective Order (Docket No. 73). The Court will hold a hearing on the Government's Amended Motion, Defendant Russell's Motion to Strike the same, and Defendant Vanderveer's Motion to Strike.

## III. Appointment of Co-Counsel

Finally, Defendant Russell has filed a Motion for the Appointment of Co-Counsel. That, too, will be considered at the hearing to be set by the Court.

Except in capital cases, the CJA does not specifically speak in terms of the appointment of more than one counsel per defendant, although it does use "the word 'counsel' which under its plain language usage may be singular or plural." United States v. Kott, 2011 WL 2357508, at *1 (D.

Alaska June 13, 2011). Moreover, the Guide to Judicial Policy issued by the Administrative Office of the United States Court contemplates the appointment of a second attorney "[i]n an extremely difficult case where the court finds it in the interest of justice to appoint an additional attorney," as does the Model Criminal Justice Act Plan. Administrative Office of the United States Court, GUIDE TO JUDICIARY POLICY AND PROCEDURES, Chapter 7, § 2.11 & App'x 2A: *Model CJA Plan*, p. 5. Based on that authority, or at least a lack of prohibition in the CJA, numerous courts – including this one – have appointed additional counsel in non-capital, but extremely difficult cases. See e.g. United States v. Carr, 427 F.3d 394, 401 (6th Cir. 2005) (noting that two attorneys had been appointed to represent an indigent defendant facing mail fraud and conspiracy charges); United States v. Sperl, Case No. 3:07-00078-01, Docket No. 226 (Trauger, J.) (appointing additional attorney in case involving numerous counts of tax fraud); United States v. Stokes, Case No. 3:06-CR-00204 (Docket No. 69) (Echols, J.) (appointing additional counsel in case involving charges of embezzlement, wire fraud, mail fraud, bankruptcy fraud, and money laundering).

"'[A]s CJA matters rarely generate published decisions,'" however, "there is little authority on the standard of review applicable to a district court's decision to [grant or] deny appointment of additional . . . counsel under the CJA." United States v. Clark, 717 F.3d 790, 810–11 (10th Cir. 2013). After noting the lack of authority on the issue, the Tenth Circuit in Clark concluded that (1) whether to appoint additional counsel is a matter of discretion; (2) a defendant must do more than allege that additional counsel will be helpful – he must convince the court that additional counsel is necessary to an adequate defense; and (3) "unlike a defendant's right to spend his own money *ad infinitum* on counsel of his choosing, . . . the right to court-appointed counsel is geared toward the goal of ensuring constitutionally adequate representation[.]" Id. at 811-12 (emphasis in original)

6

(citation omitted).

Here, Defendant Russell has made strides in convincing the Court that additional counsel may be appropriate and necessary to assure an adequate defense. He is charged in fourteen counts with crimes ranging from conspiracy, to wire fraud, to honest services fraud, to bribery, to extortion, and to attempted witness tampering. Trial is set to begin on February 7, 2017, and between now and then counsel is confronted with reviewing and distilling discovery that has been provided, which counsel describes as "twenty, four-inch thick, binders" plus "an "additional CD and three hard drives containing data that may add to the amount of printed materials." (Docket No. 80 at 2). Further, and leaving aside the legal issues that are bound to arise in a case charging the assortment of crimes listed in the Indictment, counsel asserts that her review of just "a fraction of the discovery" has led to the identification of "**eighty** witnesses . . . who need to be interviewed[.]" (Id., bold in original). Completing the necessary tasks between now and the scheduled trial date would indeed appear to be a herculean task for one attorney.[2]

That said, Defendant Russell's motion is premised on his eligibility for the appointment of counsel under the CJA, something that the Government challenges in whole and in part. Accordingly, the Court will consider Defendant Russell's request for additional counsel in conjunction with the inquiry into whether he is entitled to appointed counsel.

### IV. Conclusion

On the basis of the foregoing, the Motion for Bill of Particulars will be granted in part and denied in part. The Court will hold a hearing on the remaining motions which have not been

---

[2] Defendant Arnold is represented by two retained lawyers. Defendant Vanderveer has one attorney appointed to represent him, but that attorney is a Federal Public Defender who, presumably, can enlist the aid of another attorney in that office should the need arise.

rendered moot by the Government's Amended Motion Regarding Eligibility for Appointed Counsel.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE